[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
The plaintiffs, Pace Motor Lines, Inc. and Pace Air Services, Inc., seek a temporary injunction (1) restraining defendant Henry Butterworth, Sr. from soliciting plaintiffs' customers that are located in Fairfield and New Haven Counties, Connecticut, and in the area of JFK and La Guardia airports in New York, and (2) restraining defendant Richard Saputo d/b/a International Service Corporation and International Service Corporation from employing defendant Butterworth to solicit Pace customers. The plaintiff's claim, inter alia, that the defendants have acquired and are using information about the plaintiffs' customers in violation of the Connecticut Uniform Trade Secret Act, General Statutes § 35-50 et seq. For the reasons stated below, the application for a temporary injunction is denied.
Plaintiff Pace Motor Lines, Inc. operates an intrastate and interstate trucking company. It also operates an air freight division through a wholly-owned subsidiary, Pace Air Services, Inc. Pace is one of the larger regional freight companies providing freight service between New England and the New York and New Jersey docks and airports. It employs three hundred forty people, has two to three thousand customers, and, on a typical day, has fifty to sixty trucks operating in Connecticut.
Defendant Butterworth has been in the air freight business over forty years. He is now eighty years of age. He developed an air freight business, known as Air Cargo Business. In 1989, he sold the assets of his business to Pace for $2,600.00 and agreed for a period of five years not to compete with Pace in the air cargo service business or to divert from Pace any customers of Air Cargo Business. At the same time, he entered into a consulting agreement with Pace for a period of forty-two months under which he agreed to work for Pace as an independent contractor for twenty hours per week. He was paid $600.00 per week for the first twenty-six weeks of the consulting period and $700.00 per week for the remainder of the period. After the term of the consulting agreement expired, defendant Butterworth continued working for Pace as an CT Page 5187 independent contractor. In July of 2001, his employment was terminated by Pace after a supervisor concluded that Butterworth was making non-productive social calls on customers.
On January 7, 2002, Butterworth started working for International Service Corporation, which is operated by defendant Saputo. When Butterworth calls on customers for International Service Corporation, he does not denigrate Pace's services or Pace's pricing structure. He leaves a pricing schedule that International Service Corporation has used for a considerable period of time.
Defendant Saputo became affiliated with International Service Corporation in 1989 after he left the employ of Pace. His company provides freight brokerage services. It is not a trucking company. It is about one-fiftieth the size of Pace. Saputo has not acquired from Butterworth any specific information about Pace customers.
Pace claims that its customer list, the names of the "contact" people working for customers, and pricing information are trade secrets. The term "trade secret" is defined in § 35-51 (d) of the General Statutes. The information that Pace claims is a trade secret is the kind of information that can qualify as a trade secret. It is the kind of information included in the nonexhaustive list contained in the statute. See Elm City Cheese Co. v. Federico, 251 Conn. 59, 70-74, 752 A.2d 1037
(1999); Town Country House Homes Service v. Evans, 150 Conn. 314,318-19, 189 A.2d 390 (1963).
To establish the information as trade secrets, as defined by § 35-51
(d), Pace must prove that the information (1) is of independent economic value; and (2) was the subject of reasonable efforts to maintain its secrecy. The court will address the latter requirement.
"Some of the factors to be considered in determining whether given information is a trade secret are (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Restatement, 4 Torts 757, comment b." Town Country House Homes Service v. Evans, Id at 319.
The sales information for a Pace customer or potential customer is recorded by salespersons on profile sheets that are given to the sales manager who reviews the information with Pace's owners. After the owners CT Page 5188 determine an appropriate rate for the customer's needs, the profile sheets are given back to the salesperson together with a letter. The salesperson hand carries the documents to the customer or potential customer. A profile sheet lists, among other things, the customer's contact person and the rate to be charged. Copies of the profile sheets are kept in bins in the sales manager's office until each salesperson picks up his or her profile sheets. A daily log of shipments is also kept in the sales manager's office. Salespersons review the logs each week to see what their customers are doing. While the company's premises are secure, no extraordinary steps are taken to secure the secrecy of the identity of Pace's customers.
When Butterworth left the employ of Pace, he took with him the knowledge that he acquired from his work experience. He did not take a written list of customers. While he may have taken a few profile sheets for individual customers, he no longer possess such documents.
Should this court find that the information that Butterworth acquired as a result of his work experience constitutes a trade secret, the finding "would turn employment with any industry into a universal contract not to compete and would completely restrict the rights of a former employee to use knowledge legitimately gained during employment."Elm City Cheese Company, Inc., et al. v. Federico et al., 251 Conn. 59,104, 752 A.2d 1037 (1999) (McDonald, J., dissenting opinion). Generally, the time, effort and resources undertaken by a business to acquire clients does not make its list of customers a trade secret. CustardInsurance Adjusters v. Nardi, Docket No. CV 98-00619675 (Jud. Dist. of Ansonia at Milford, Corradino, J.) (April 20, 2000). While a Pace salesperson who knows and has visited the contact person at a business would have a step up on a cold caller, a determined competitor should be able to meet or converse with the appropriate contact person. While there are various fees and charges that make up the rate that Pace charges a customer, the rate in such a competitive industry does not appear to be information that should be protected as a trade secret. This court concludes that the customer list, names of contact persons, and rates are not trade secrets.
Finally, this court is of the opinion that the issuance of an injunction under the circumstances of this case would be inequitable. Pace has not shown that it has been harmed in any significant way by Butterworth's efforts. While it claims that it has been forced to lower its rates as a consequence of Butterworth's solicitation efforts, it is just as likely that Pace altered its rates due to changes in the economy.
The application for a temporary injunction is denied. CT Page 5189
THIM, J.